FILED
 2008 Oct-21  AM 09:07
U.S. DISTRICT COURT
    N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | |
|---|---|
| **LASALLE BANK NATIONAL ASSOCIATION, as Trustee** ) ) ) | |
| **Plaintiff,** ) ) | |
| v. ) ) | **Case No.: 1:08-CV-1169-VEH** |
| **OXFORD HOSPITALITY ENTERPRISES, INC.,** ) ) ) ) | |
| **Defendant.** ) | |

## MEMORANDUM OF DECISION
## ON PARTIAL FINAL DEFAULT JUDGMENT
## AGAINST DEFENDANT OXFORD HOSPITALITY ENTERPRISES, INC.

### I.  INTRODUCTION

Pending before the court is the Renewed Motion for Default Judgment and Evidentiary Submission in Support Thereof Against Defendant Oxford Hospitality Enterprises, Inc. ("Oxford") (Doc. 10) ("Renewed Motion") filed on August 8, 2008, by Plaintiff LaSalle Bank National Association ("Trustee"), as Trustee for the holders of the J. P. Morgan Chase Commercial Mortgage Securities Trust 2007 – LDP12 Commercial Mortgage Pass-Through Certificates by J. E. Robert Company, Inc., as

special servicer for the Trustee.[1]

On July 1, 2008, the Trustee filed a verified complaint against Oxford setting forth three separate counts as follows: breach of contract, judicial foreclosure, and appointment of a receiver. (*See generally* Doc. 1). The complaint premises this court's subject matter jurisdiction on the basis of diversity pursuant to 28 U.S.C. § 1332. (Doc. 1 ¶¶ 1-4).

On August 11, 2008, and in response to the Trustee's Motion to Clerk for Entry of Judgment by Default and Supporting Affidavits (Doc. 9), the clerk entered a default (Doc. 11) against Oxford for its failure to timely answer or otherwise respond to the complaint that was served on it by certified mail on July 5, 2008. (Doc. 6). In connection with the clerk's entry, the Renewed Motion expressly seeks "an order of judgment awarding damages in the amount of $5,537,173.38 plus attorneys' fees and court costs." (Doc. 10 ¶ 3). This request for relief pertains to count I of the Trustee's complaint for breach of contract. (Doc. 1 ¶¶ 18-21).

The Renewed Motion also "requests that the Court approve the appointment

---

[1] Prior to re-seeking default judgment relief, on July 1, 2008, the Trustee filed an Ex Parte Motion for Appointment of a Receiver (Doc. 3), which the court denied without prejudice (Doc. 5) on July 11, 2008. Subsequently, on August 1, 2008, the Trustee filed its initial default judgment motion. (Doc. 7). The court denied this first motion without prejudice on the basis that the Trustee had not yet obtained an entry of default from the clerk. (Doc. 8).

of the receiver and grant the relief requested in Count III of the Complaint." (Doc. 10 ¶ 4). The Renewed Motion does not seek default judgment with respect to count II of the Trustee's complaint for judicial foreclosure. (*See generally* Doc. 10; Doc. 1 ¶¶ 22-25). As evidentiary support for its Renewed Motion, the Trustee relies upon the verified allegations of the complaint; the exhibits attached to the verified complaint; the affidavit of Kevin Walsh, Vice President of J.E. Robert Company, Inc. (Doc. 10 at Ex. A); and the affidavit of William D. Jones III, an attorney of record for the Trustee. (Doc. 10 at Ex. B).

On August 25, 2008, the court entered a show cause order (Doc. 13) on the Renewed Motion giving Oxford twenty days in which to respond to the merits of the Trustee's Renewed Motion. On September 25, 2008, the clerk entered an acknowledgment of service by certified mail (Doc. 14), which indicates that Oxford received a copy of the show cause order on September 24, 2008.

Therefore, (at least)$^2$ over twenty days have passed since Oxford received notice that the Trustee's Renewed Motion was pending against it. To date, no attorney has entered an appearance on behalf of Oxford. Relatedly, no response to the show cause order has been filed on its behalf. Having considered the evidence

---

$^2$ A note entered by the clerk in CM/ECF on September 23, 2008, indicates that the show cause order was first sent to Oxford via regular mail on August 25, 2008, and then it was resent via certified mail on September 23, 2008.

and applicable legal authority, the court concludes that the Renewed Motion is due to be granted with the limited exception of any relief sought as to attorneys' fees and costs as discussed more fully below.

## II. STANDARDS GOVERNING DECISION

### A. Default Judgment

As explained by Judge William H. Steele of the United States District Court for the Southern District of Alabama regarding default judgments:

> The law is clear, however, that Lacey's failure to appear and the Clerk's subsequent entry of default against her do not automatically entitle plaintiffs to a default judgment. Indeed, a default is not "an absolute confession by the defendant of his liability and of the plaintiff's right to recover," but is instead merely "an admission of the facts cited in the Complaint, which by themselves may or may not be sufficient to establish a defendant's liability." *Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1357 (S.D. Ga. 2004); *see also Descent v. Kolitsidas*, 396 F. Supp. 2d 1315, 1316 (M.D. Fla. 2005) ("the defendants' default notwithstanding, the plaintiff is entitled to a default judgment only if the complaint states a claim for relief"); *GMAC Commercial Mortg. Corp. v. Maitland Hotel Associates, Ltd.*, 218 F. Supp. 2d 1355, 1359 (M.D. Fla. 2002) (default judgment is appropriate only if court finds sufficient basis in pleadings for judgment to be entered, and that complaint states a claim). Stated differently, "a default judgment cannot stand on a complaint that fails to state a claim." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997).

*Virgin Records America, Inc. v. Lacey*, 510 F. Supp. 2d 588, 591-92 (S.D. Ala. 2007).

Accordingly, despite the factual admissions associated with Oxford's default, this

court must still separately determine whether those factual admissions support entry of judgment as to the claims asserted by the Trustee and as to which the Trustee seeks default judgment.

### B.     Judgment on Multiple Claims or Involving Multiple Parties

As noted above, the Trustee's Renewed Motion seeks the entry of a "final judgment" as to certain claims only. Rule 54(b) of the Federal Rules of Civil Procedure explains the distinctions between a final and a non-final judgment as follows:

> When an action presents more than one claim for relief--whether as a claim, counterclaim, crossclaim, or third-party claim--or when multiple parties are involved, <u>the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay</u>. Otherwise, <u>any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties</u> and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b) (emphasis added). Therefore, in the absence of a certification by this court under Rule 54(b), any decision rendered on the Renewed Motion would be a non-final order.[3]

---

[3] The court points out that the Trustee has not expressly requested the entry of a Rule 54(b) final order, but nonetheless believes that a final order was the Trustee's actual intention, given the overall context of the Renewed Motion and the language of the proposed order of final default judgment attached to the Renewed Motion. (*See*

**III.   ANALYSIS**

Because Oxford has failed to answer or otherwise respond to the Trustee's complaint, all verified factual allegations contained in it are deemed admitted. *See Virgin Records*, 510 F. Supp. 2d at 591-92 ("[A] default is not 'an absolute confession by the defendant of his liability and of the plaintiff's right to recover,' but is instead merely 'an admission of the facts cited in the Complaint, which by themselves may or may not be sufficient to establish a defendant's liability.'") (citations omitted). This means that, as a factual matter, Oxford's contractual default under the loan documents has been established. (*See, e.g.*, Doc. 1 ¶ 14 ("Oxford has defaulted on its obligations to the Trustee in that it has failed to make monthly payments due under the Loan Documents for the months of March, 2008, through June, 2008.")). Now the court turns to the specific counts on which the Trustee seeks default judgment relief, premised upon Oxford's factually established contractual default.

**Count I for Breach of Contract**

Regarding count I, the admitted verified factual allegations of the complaint establish the *prima facie* elements necessary to sustain a claim for breach of contract including the existence of an agreement (*i.e.*, in this case, the subject mortgage and

---

*generally* Doc. 10; *id.* at Ex. C).

other related loan documents), a breach thereunder (*i.e.*, Oxford's default under the loan documents), and resulting damages caused by the breach (*i.e.*, suffered by the Trustee as the real party in interest for the holders of the mortgage trust). *See, e.g, Southern Medical Health Systems, Inc. v. Vaughn*, 669 So.2d 98, 99 (Ala. 1995) ("In the ordinary breach of contract action, the claimant must prove: (1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages." (citations omitted)).

Further, the affidavit of William D. Jones, III, an attorney of record for the Trustee, establishes default damages in the sum certain amount of $5,537,173.38 ($5,460,454.24 in outstanding principal; plus $74,148.38 in unpaid pre-judgment interest; plus $2,570.96 in late charges).  Accordingly, based upon this evidence, default judgment is due to be entered in favor of the Trustee and against Defendant Oxford on count I for breach of contract in the collective amount of $5,537,173.38.

Regarding attorneys' fees and costs which also are asserted as a part of count I, the Trustee, once again through the affidavit of William D. Jones, III, establishes fees in the amount of $22,386.56 and expenses in the amount of $653.62, through July 31, 2008.  (Doc. 10 at Ex. B ¶ 10).  However, in filing its Renewed Motion, the Trustee does not specify the contractual provision or other authority on which it relies to recover attorneys' fees and costs against Oxford.  *See, e.g.*, Fed. R. Civ. P.

54(d)(2)(B)(ii) (indicating that in requesting attorney's fees, motion must "specify the judgment and the statute, rule, or other grounds entitling the movant to the award"). Likewise, the underlying basis for such an award is not readily apparent from the face of the complaint.

Also, the court is unclear the extent to which the Trustee is really seeking a final judgment as to attorneys' fees and costs, given the concluding language contained in its Renewed Motion that the court enter final judgment in the amount of $5,537,173.38 as to count I without referencing any amount for attorneys' fees or costs (*see* Doc. 10 at 2), and the fact that, <u>with count II still remaining in the case</u>, the court anticipates that further attorneys' fees and costs will likely be incurred. Therefore, to the extent that the Trustee seeks a final judgment award of attorneys' fees and costs in its Renewed Motion, that request is due to be denied without prejudice to the right of the Trustee to refile it in a manner that cures the court's concerns as set out above.

## **Count III for Appointment of Receiver**

Relating to count III, the Eleventh Circuit has made it clear that this court should be guided by federal law in evaluating a receiver appointment request, even in the context of diversity jurisdiction. *See National Partnership Inv. Corp. v. National Housing Development Corp.*, 153 F.3d 1289, 1292 (11th Cir. 1998) ("We

therefore hold that federal law governs the appointment of a receiver by a federal court exercising diversity jurisdiction."). Relatedly, "[t]he decision whether to remove a receiver is, <u>like the decision to appoint one, an equitable determination resting in the sound discretion of the district court</u> and reviewable only for an abuse of that discretion." *Securities & Exchange Commission v. Spence & Green Chemical Co.*, 612 F.2d 896, 904 (5th Cir. 1980) (emphasis added).[4]

As for relevant considerations to a receivership determination, in *National Partnership*, the Eleventh Circuit cited with approval the First Circuit's decision in *Consolidated Rail Corp. v. Fore River Ry. Co.*, 861 F.2d 322 (1st Cir. 1988), as a guide. As the First Circuit explained issues applicable to the appointment of a receiver:

> <u>Courts have recognized many factors that are relevant for a court to consider when determining the appropriateness of the appointment of a receiver.</u> These include fraudulent conduct on the part of the defendant, *see Burnrite Coal Briquette Co. v. Riggs*, 274 U.S. 208, 212, 47 S. Ct. 578, 579, 71 L. Ed. 1002 (1927); imminent danger that property will be lost or squandered, *see Gordon v. Washington*, 295 U.S. 30, 37-39, 55 S. Ct. 584, 588-89, 79 L. Ed. 1282 (1935); *Garden Homes, Inc. v. United States*, 200 F.2d 299, 301 (1st Cir.1952); the inadequacy of available legal remedies, *see Leighton v. One William Street Fund, Inc.*, 343 F.2d 565, 568 (2d Cir.1965); the probability that harm to the plaintiff by denial of the appointment would be greater than the injury

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

> to the parties opposing appointment, *see Mintzer*, 263 F.2d at 825; the plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property, *see Bookout v. First Nat'l Mortgage & Discount Co.*, 514 F.2d 757, 758 (5th Cir.1975); and whether the interests of the plaintiff and others sought to be protected will in fact be well served by the receivership, *see Commodity Futures*, 481 F. Supp. at 441.

*Fore River*, 861 F.2d 326-27 (emphasis added).

While acknowledging that the appointment of a receiver is an extraordinary remedy, *see, e.g., Spence*, 612 F.2d at 904 ("[T]the imposition of a receivership on a corporation is a drastic measure, the detrimental business effects of which should be carefully considered."), several factors favor granting the relief in this case. In particular, the Trustee's request for the appointment of a receiver in its Renewed Motion is due to be granted on the basis that the loan documents expressly allow "the Trustee to have a receiver appointed to operate and manage the property subject to the Mortgage in the event of Oxford's default." (Doc. 10 at Ex. A ¶ 5; Compl. at Ex. A § 3.1(d)) (providing that Trustee, as standing in the shoes of the Lender, may "make application ex parte, to a court of competent jurisdiction for appointment of a receiver for all or any part of the Property, as a matter of strict right and without notice to Borrower"); Compl. at Ex. A § 3.1(d) ("Borrower does hereby irrevocably consent to such appointment, waives any and all notice of and defenses to such appointment and agrees not to oppose any application therefor by Lender[.]")).

Indeed, the inclusion of a contractual provision permitting the ex parte appointment of a receiver in the event of a default, together with Oxford's failure to refute such provision or the fact of default, substantially influences this court's decision that such a remedy is appropriate under the facts of this case.

Other factors that support the appointment of a receiver are: (1) that "Oxford's continued defaults to the Trustee and to the Franchisor threaten to significantly devalue the property" (Doc. 1 ¶ 32); and (2) "[t]here is a clear and present danger of the loss of the Trustee's security which includes rents. The loss of rents has occurred, is now occurring, and unless a receiver is appointed, will continue to occur. It is necessary that a receiver be appointed forthwith to protect and preserve said rents pending a conclusion of this action." (*Id.* ¶ 36).

Accordingly for all these reasons, the Trustee's Renewed Motion is due to be granted as to count III. The court will set forth the specific terms and conditions relating to the appointment of a receiver in a separate order also entered on this date.

## IV. CONCLUSION

Regarding the entry of judgment for contractual damages in the amount $5,537,173.38 under count I and for the appointment of a receiver under count III, the court expressly determines that there is no just reason for delay in the entry of final

judgment as to these claims[5] and will enter a separate order of partial final default judgment against Oxford with respect to these counts and direct that they be entered as a final judgment under Rule 54(b) of the Federal Rules of Civil Procedure.

**DONE** and **ORDERED** this 21st day of October, 2008.

                                            **VIRGINIA EMERSON HOPKINS**
                                            United States District Judge

---

[5] The Trustee seeks the entry of final judgment in its Renewed Motion. However, because the Renewed Motion does not address all of the Trustee's claims, any ruling upon it cannot, under Rule 54(b) "however [so] designated, . . . end the action as to any of the claims" in the absence of this express determination by the court.